IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROANNA LYNN PATTERSON, | CASE NO. 5:14-CV-1470 |
| Plaintiff, | JUDGE SARA LIOI |
| v. | |
| | MAGISTRATE JUDGE |
| | KENNETH S. McHARGH |
| COMMISSIONER OF SOCIAL | |
| SECURITY ADMINISTRATION, | **REPORT & RECOMMENDATION** |
| Defendant. | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Roanna Lynn Patterson's ("Plaintiff" or "Patterson") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits around April 6, 2010. (Tr. 16, 165-75).  Plaintiff alleged she became disabled on March 24, 2008, due to suffering from back and neck pain, diabetes, and depression. (Tr. 165, 172, 219).  The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 54-60, 67-80).

1

At Plaintiff's request, administrative law judge ("ALJ") Jon Johnson convened an administrative hearing on September 5, 2012, to evaluate her applications. (Tr. 30-47). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Patricia McVann, also appeared and testified. (*Id.*).

On September 13, 2012, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 16-25). After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 12). The Appeals Council denied the request for review, making the ALJ's September 13, 2012, determination the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

2

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on December 28, 1970, and was 37-years-old on her alleged onset date and 41-years-old at the time of the ALJ's decision. (Tr. 34, 165). Accordingly, she was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She completed high school and obtained an associate's degree in accounting, computers, administration, and travel. (Tr. 34). Patterson has past relevant work as a home health aide, accounting clerk, website systems administrator, cashier, customer service representative, and a front desk clerk. (Tr. 42-44).

### B. Medical Evidence[2]

#### 1. Physical Health

On January 14, 2008, Plaintiff sought treatment at the emergency room at St. Joseph's Hospital for complaints of chest pain and shortness of breath. (Tr. 295-96). Testing was normal and the record does not reflect what course of treatment doctors recommended. (*Id.*).

It appears that Patterson did not seek further medical treatment until February 10, 2010, which was nearly two years after her alleged onset date of disability of March 24, 2008. Plaintiff was treated at Pleasant Valley Hospital for complaints of chest pain, nausea, and headache. (Tr. 356-58). She was diagnosed with gastroenteritis complicated by poorly controlled diabetes. (Tr. 361). Patterson's symptoms were treated and she was discharged home in stable condition. (*Id.*).

On February 19, 2010, Plaintiff returned to the hospital with left arm pain and swelling and was diagnosed with deep vein thrombosis ("DVT"). (Tr. 362-63). She was admitted and

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

3

treated with Heparin and Coumadin. (Tr. 366). She was discharged on February 22, 2010, and instructed to continue Coumadin. (*Id.*).

On June 22, 2010, Sushil Sethi, M.D., performed a consultative physical examination of Plaintiff in connection with her disability application. (Tr. 328-34). The examination showed largely normal findings, including a normal gait, and full muscle strength and range of motion in all extremities. (Tr. 330). Dr. Sethi found moderate tenderness in the cervical spine and some limitation in range of motion, but no muscle spasm or guarding. Plaintiff also had some limited range of motion in the lumbar spine, but straight leg raising tests were negative. Neurologically, Plaintiff was intact. The doctor noted that x-rays of the cervical spine showed a minimal spur posteriorly at C4-5-6, and concluded that the images suggested mild congenital spinal stenosis. Dr. Sethi diagnosed chronic degenerative disc disease with spinal stenosis of the cervical spine, hypertension, diabetes, and depression. In regard to work abilities, Dr. Sethi opined that Plaintiff could perform medium work, including the ability to sit 6 hours, walk 2 to 3 hours, and stand 2 to 3 hours in an 8-hour workday. (*Id.*).

On July 2, 2010, state agency reviewing physician Jerry McCloud, M.D., assed the record and provided his opinion regarding Plaintiff's residual functional capacity. (Tr. 336-43). Dr. McCloud concluded that Plaintiff could perform a range of medium work, including standing, walking, or sitting, each for a total of 6 hours in an 8-hour day. (Tr. 337). He found that Plaintiff had no postural, manipulative, or environmental limitations. (Tr. 338-40).

On July 7, 2010, Plaintiff attended a routine examination with Heather Kay, C.F.N.P., and expressed trouble sleeping and blood sugar issues, attributable to a recent poor diet. (Tr. 402-04). Kay diagnosed non-insulin dependent diabetes mellitus, hyperlipidemia, hypertension,

4

morbid obesity, gastroesophageal reflux disease ("GERD"), and thrombophlebitis. (Tr. 403). Plaintiff was instructed to monitor her blood sugar levels and started on Restoril for sleep. (*Id.*).

On July 10, 2010, Patterson presented to Pleasant Valley Hospital complaining of rib, chest, and back pain. (Tr. 352-55, 372-75). Aside from some degenerative spondylosis in her cervical spine, x-rays of Plaintiff's ribs, thoracic spine, and lumbar spine were all generally normal. (*Id.*).

On July 27, 2010, Plaintiff presented to William Casto, M.D., with renewed complaints of back pain after having fallen at home. (Tr. 405-06). She reported having struck her right knee in the fall. (Tr. 405). Patterson also reported having back pain since 2000 and pain in her ribs. (*Id.*). She was diagnosed with thoracic spine and low back pain, costochondritis, diabetes, peripheral vascular disease, and thrombophlebitis. (Tr. 406). Dr. Casto could not identify the source of Patterson's back pain, as x-rays did not show a cause and Plaintiff could not afford an MRI. (*Id.*). The doctor prescribed Lortab and Flexeril and instructed Patterson to apply warm, moist heat and perform range of motion exercises. (*Id.*).

On August 3, 2010, Plaintiff presented at Pleasant Valley Hospital with complaints of right forearm bruising, swelling, and pain. (Tr. 345). Patterson was diagnosed with a hematoma in the right arm and instructed to follow up with Dr. Casto later that week. (Tr. 346). It is not clear from the record whether Plaintiff did so.

In December 2010, Plaintiff presented for an evaluation with James Toothman, D.O. (Tr. 409-11). Patterson indicated that she had stopped taking Coumadin for a month and had not noticed any issues as a result. (Tr. 410). Plaintiff reported high blood sugar and not being careful with her diet. (*Id.*). She felt that her anti-depressant medication was not working. (*Id.*). Dr. Toothman diagnosed type II diabetes, hypertension, depression, thrombophlebitis,

5

degenerative joint disease with back pain, GERD, a history of tachycardia, and insomnia. (Tr. 411).  The doctor increased Plaintiff's prescription of Glucophage and changed her anti-depressant. (*Id.*).

On January 21, 2011, state agency reviewing physician Gerald Klyop, M.D., assessed the updated record. (Tr. 391).  Dr. Klyop found no worsening in Plaintiff's condition and affirmed Dr. McCloud's opinion. (*Id.*).

On May 10, 2012, Stephen Nutter, M.D., performed a consultative physical examination of Plaintiff. (Tr. 438-46).  Plaintiff reported neck pain, as well as back pain that radiated into both legs. (Tr. 438).  She described constant joint pain in her hands, wrists, hips, knees, ankles, feet, and left shoulder. (*Id.*).  A physical examination showed normal grip and motor strength, fine manipulation, and sensation; negative straight leg raising test; no evidence of nerve root compression in the spine; and no evidence of rheumatoid arthritis. (Tr. 440-41).  There was some decreased range of motion in Plaintiff's cervical and lumbar spine, as well as, pain and tenderness in the left hand and shoulder, knees, and hips. (Tr. 440-41, 444-45).  The doctor diagnosed cervical and dorsolumbar strain without evidence of radiculopathy and mild degenerative arthritis. (Tr. 441).

On May 15, 2012, Dr. Nutter completed a medical source statement regarding Plaintiff's ability to perform physical work-related activities. (Tr. 448-53).   The doctor opined that Patterson could lift and carry up to 10 pounds continuously and 20 pounds frequently; sit for 4 hours total in an 8-hour workday; stand for 3 hours total in an 8-hour workday; and walk for 2 hours total in an 8-hour workday. (Tr. 448-49).  Patterson was unlimited in her ability to use her hands, aside from only frequent overhead reaching. (Tr. 450).  In terms of postural activities, Plaintiff could frequently climb stairs and ramps; frequently balance; occasionally stoop and

kneel; and never climb ladders or scaffolds, crouch, or crawl. (Tr. 451). Regarding environmental limitations, Plaintiff was limited to frequent exposure to unprotected heights and vibrations. (Tr. 452).

### 2. Mental Health

On May 26, 2010, William Steinhoff, M.A., evaluated Plaintiff's mental health in association with her application for benefits. (Tr. 304-08). Plaintiff described difficulty sleeping, a depressed mood, decreased appetite, anxiety, and panic attacks. (Tr. 304). She lived with a friend, who did the majority of household chores except for laundry. (Tr. 305). Patterson performed her own personal care and prepared meals. She drove three to four times per week to take her parents to appointments, go to the store, and go to her own appointments. Patterson generally spent a significant portion of the day watching television and using the computer. She also enjoyed reading and crochet. (*Id.*).

Following an examination, the psychologist described Plaintiff as mildly depressed, but with an affect that was broad in range. (Tr. 307). At times during the examination Patterson had difficulty staying focused and was restless. Steinhoff recounted that Patterson was prescribed Celexa for depression and appeared to be responding well. He assigned a Global Assessment of Functioning ("GAF") score of 68, representing mild symptoms. Steinhoff concluded that Patterson was moderately impaired in her ability to relate to others; understand, remember, and follow instructions; maintain attention, concentration, persistence, and pace; and withstand stress and pressure associated with work activity. (*Id.*).

Approximately two years later, on March 1, 2012, Steinhoff evaluated Plaintiff a second time, again in association with her disability application. (Tr. 429-37). In terms of symptoms, Plaintiff reported crying spells, trouble sleeping, poor appetite, a depressed mood, low energy,

panic attacks, a fast heartbeat, and shortness of breath. (Tr. 429-30). Following a mental status examination, Steinhoff described Plaintiff's speech and thought process as clear, coherent, and relevant. (Tr. 431). Her mood was euthymic, although her affect was restricted in range. Steinhoff opined that Plaintiff appeared restless. Her immediate and remote memories were normal, while her recent memory appeared moderately impaired. Patterson's concentration was adequate, abstract reasoning was moderately impaired, insight was fair, and judgment was average. (Tr. 431-32). Steinhoff concluded that Patterson would have some impairment in her ability to perform multi-step tasks and respond to work pressure in a work setting. (Tr. 434).

On a medical source statement, Steinhoff reported that Plaintiff would have moderate limitations in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. (Tr. 435). In support of these limitations, the psychologist cited a moderate impairment in recent memory and his observations that Plaintiff appeared preoccupied with pain, had a depressed mood, and was restless. He also noted Plaintiff's reports of frequent crying spells, low energy, and anxiety in social situations. (*Id.*).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since March 24, 2008, the alleged onset date.

3. The claimant has the following severe impairments: obesity and degenerative disc disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

8

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).

6. The claimant is capable of performing past relevant work as a home health aide; an account clerk; a system administrator for a website; a cashier; a customer service representative; and a front desk clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 24, 2008, through the date of this decision.

(Tr. 18-25) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might

accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

### A. Physical Consultative Examiner, Dr. Nutter

Plaintiff takes issue with the ALJ's treatment of Dr. Nutter's May 15, 2012, assessment of Plaintiff's abilities to perform work-related physical activities. Dr. Nutter issued his opinion after performing a one-time physical examination earlier that month. Plaintiff asserts that the ALJ committed two errors when evaluating Dr. Nutter's opinion.

First, Patterson asserts that the ALJ improperly characterized Dr. Nutter's opinion as encompassing a limitation to light work. Contrary to the ALJ's interpretation of Dr. Nutter's report, Plaintiff posits that Dr. Nutter's opinion found her unable to perform the requisite standing or walking required for light work, as well as the sitting required for sedentary work. Dr. Nutter opined that Plaintiff could stand for a total of 3 hours, walk for a total of 2 hours, and sit for a total of 4 hours during an 8-hour workday. (Tr. 449).

The regulations explain that a job is classified as light work "when it requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b). Social Security Ruling ("S.S.R.") 83-10 states that a "full range of light work requires standing or walking, off and on, for a total of *approximately* 6 hours of an 8-hour workday." S.S.R. 83-10, 1983 WL 31251, at *6 (1983) (emphasis added). The ruling "does not explicitly preclude light work for an individual who cannot stand or walk for 6 hours of an 8-hour workday." Sulecki v. Comm'r of Soc. Sec., No. 1:13-CV-1597, 2014 WL 2434631, at *14 (N.D. Ohio May 29, 2014). Instead, it explains that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." S.S.R. 83-10, 1983 WL 31251, at *6.

In the present case, the ALJ found that Dr. Nutter's opinion "encompasses a limitation to light exertion." (Tr. 24). Dr. Nutter's opinion, which provides that Plaintiff could stand or walk for a total of 5 hours, could allow for at least a limited, if not a full, range of light work, as the rulings only require that an individual be able to walk or stand for "approximately" 6 hours. Thus, the ALJ's characterization of Dr. Nutter's opinion in this sense is not inaccurate, though the doctor's opinion may not necessarily allow for a full range of light work.

Plaintiff also argues that Dr. Nutter's opinion precludes her from performing sedentary work. A sedentary job "is defined as one which involves sitting [and] a certain amount of walking and standing." 20 C.F.R. §§ 404.1567(a), 416.967(a). S.S.R. 83-10 provides that "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." S.S.R. 83-10, 1983 WL 31251, at *6 .

11

Here, Dr. Nutter found that Plaintiff could sit for a total of 4 hours during a workday, which falls below the 6 hour threshold.

Even assuming that the ALJ misinterpreted Dr. Nutter's opinion, and it precludes light and sedentary work, under the circumstances of this case, the error is harmless. The ALJ adopted Dr. Nutter's opinion only to the extent that it coincided with a limitation to light work. Notably, of the seven occupations the VE identified that Plaintiff could perform, six were sedentary occupations. (Tr. 43-45). The ALJ's rationale, as well as his assessment of the evidence, supports a finding that Plaintiff can perform a full range of light work and at least sedentary work. For example, the ALJ noted that Plaintiff underwent physical therapy for back pain in 2001, approximately 7 years prior to her disability onset, and did not undergo physical therapy at any point thereafter. (Tr. 23). Plaintiff's July 2010 x-rays of her spine, chest, and ribs were normal, aside from congenital fusion at C2-3 and mild congenital spinal stenosis. (*Id.*). Despite her allegations of disability, Plaintiff treated with mostly over-the-counter medication and had large gaps in treatment. (Tr. 24). Significantly, the record appears to reflect that Plaintiff did not receive any medical treatment after December 2010 through the date of the ALJ's September 2012 decision. (*Id.*). Additionally, Drs. Sethi, McCloud, and Klyop, whose opinions the ALJ relied upon in formulating the RFC, all found that Patterson could perform medium work, as well as the sitting required for sedentary work. (Tr. 23-24, 330, 337, 391). Thus, every medical opinion of record addressing Plaintiff's RFC, aside from arguably Dr. Nutter's, showed that Plaintiff could perform light and sedentary work.

Next, Patterson claims that remand is necessary because the ALJ was required to indicate what weight was afforded to Dr. Nutter's opinion. She argues that if the ALJ gave Dr. Nutter's opinion less than full weight, then pursuant to S.S.R. 96-8p, the ALJ was obligated to explain

12

why his RFC differed from Dr. Nutter's opinion in terms of exertional level. Plaintiff also maintains that the ALJ erred in rejecting Dr. Nutter's recommended manipulative, postural, and environmental limitations.

It is well-established that for an ALJ's decision to stand, the ALJ is not required to discuss every piece of evidence in the record. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Nevertheless, if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). S.S.R. 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, *7 (July 2, 1996).

In the present case, the ALJ did not expressly state the weight assigned to the one-time examiner's opinion. Nor does he explain why he rejected Dr. Nutter's opinion regarding Plaintiff's ability to reach, as well as, the postural and environmental limitations. Despite this lack of clarity, the Court finds that any error that may exist regarding the doctor is harmless.

The Sixth Circuit has held that where an ALJ's decision is otherwise supported by substantial evidence, the failure to mention a consultative, non-treating source may not constitute reversible error. *See Dykes v. Barnhart*, 112 F. App'x 463, 467-69 (6th Cir. 2004). The *Dykes* court concluded that the ALJ's failure to explicitly reject a consultative examiner's assessment constituted harmless error because the ALJ's decision was otherwise supported by substantial

evidence. *Id.* at 468 (*citing Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001)).

Here, the ALJ did not ignore Dr. Nutter's physical assessment form. (Tr. 24). Rather the ALJ summarized the report, including the specific limitations Dr. Nutter recommended but were not included in the RFC. (*Id.*). Although the ALJ did not designate the weight attributed to Dr. Nutter, the ALJ sufficiently considered the physician's opinion and communicated that he gave it weight to the extent that it aligned with a limitation to light work. (*Id.*).

The ALJ also failed to provide a specific rationale for not incorporating Dr. Nutter's reaching, postural, and environmental limitations into the RFC. Dr. Nutter opined that Plaintiff could only frequently perform overhead reaching, climb stairs and ramps, and balance; occasionally stoop and kneel; never climb ladders or scaffolds, crouch, or crawl; and frequently be exposed to unprotected heights and vibrations. (Tr. 450-52). Nevertheless, no other physician assigned these limitations. Although Dr. Nutter's opinion is the most recent medical opinion in the record, the evidence does not show that Plaintiff's condition altered or deteriorated since Drs. Sethi, McCloud, and Klyop issued their opinions.

Additionally, a number of the jobs the VE identified[3] that Plaintiff could perform at step five of the sequential analysis do not require Plaintiff to perform the activities that Dr. Nutter prohibited. (Tr. 43-44). These occupations include accounting clerk (DOT 216.482-010, 1991 WL 671933), cashier (DOT 211.362-010, 1991 WL 671835), and order clerk (DOT 249.362-026, 1991 WL 672320). Thus, even if the ALJ had incorporated the limitations at issue into the RFC, Plaintiff would not have been entitled to benefits. Given that the jobs identified do not conflict with the doctor's recommendation, to remand for the ALJ to provide further explanation

---

[3] The VE did not indicate the Dictionary of Occupational Titles ("DOT") number that corresponded to each occupation. To the extent possible, the Court identified the occupations in the DOT by title and corresponding exertional and specific vocational preparation ("SVP") levels.

would be futile. *See Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, the assignment of error is not well taken.

### B. Function-by-function analysis

Patterson argues that the ALJ erred by failing to include a function-by-function analysis in the RFC determination as required by S.S.R. 96-8p, 1996 WL 374184, at *7. Plaintiff paraphrases and quotes from the ruling, stating that the "RFC should reflect a 'function-by-function' assessment based upon the relevant evidence of an individual's 'ability to perform work-related activities.' An RFC that fails to include a function-by-function assessment may result in the ALJ 'overlooking some of an individual's limitations or restrictions' which 'could lead to an incorrect use of an exertional category' to find that an individual can perform past relevant work." (Plaintiff's Brief at 10). More specifically, Plaintiff takes issue with the ALJ's failure to discuss each of the limitations Dr. Nutter recommended.

Despite Plaintiff's argument, S.S.R. 96-8p states that the ALJ must *consider* each function separately; it does not state that the ALJ must *discuss* each function separately in the disability decision. While "SSR 96-8p requires a function-by-function evaluation to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal citations and quotation marks omitted). "Although a function-by-function analysis is desirable, S.S.R. 96-8p does not require ALJs to produce such a detailed statement in writing," because there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* (internal citations and quotation marks omitted). "The ALJ need not

15

decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.' " *Id.* (internal citations and quotation marks omitted).

Here, the ALJ specifically provided an overview of Plaintiff's medical treatment, and discussed each of the examining and reviewing physicians' opinions regarding Plaintiff's limitations, as well as Plaintiff's subjective complaints. (Tr. 19-24).  The ALJ also stated that he had considered the entire record carefully before determining Plaintiff's RFC. (Tr. 22).  The ALJ ought to have provided a rationale for rejecting Dr. Nutter's limitations.  Nonetheless, the ALJ's opinion as a whole and discussion of evidence provides sufficient insight for the Court to conduct a meaningful review and understand why the limitations were not included in the RFC or posed in hypothetical questions to the VE.  As previously discussed, no other medical source recommended the limitations Dr. Nutter suggested.  Accordingly, Patterson's argument lacks merit.

### C.  Plaintiff's mental impairments

Lastly Plaintiff asserts that the ALJ erred when he failed to consider her mental impairments when formulating the RFC.  She quotes S.S.R. 96-8p for the propositions that "[i]n assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " 1996 WL 374184, at *5.  The ruling goes on to explain:

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may

>prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Id.* Plaintiff asserts that consultative psychologist Steinhoff opined that she may experience difficulty with her ability to perform multi-step tasks and some impairment in her ability to respond appropriately to work pressures. (Tr. 434). She asserts that the ALJ failed to consider these limitations when formulating the RFC.

At step three of the sequential evaluation, the ALJ concluded that Plaintiff's depression did not constitute a severe impairment. (Tr. 20). The ALJ also addressed Steinhoff's opinions under step three of the sequential evaluation. The ALJ summarized the psychologist's examinations and opinions from the May 2010 and March 2012 evaluations. The ALJ explained that he gave little weight to the opinions because the record did not contain evidence to support them. More specifically, the ALJ explained that Patterson had never sought mental health treatment and she remained able to care for and transport her aging parents to required appointments. (*Id.*). The ALJ's findings in this regard are substantially supported in that the record does not reflect Plaintiff pursued mental health treatment, aside from receiving prescriptions for anti-depressants from her physicians. Patterson also reported that she transported her parents to appointments a number of times per week. (Tr. 230, 305).

Plaintiff does not contest this evaluation of the psychologist's opinion. The Court finds that the ALJ provided good reason to discount Steinhoff such that the ALJ was not required to incorporate the limitations into the RFC. While the ALJ did not situate his discussion of Steinhoff's recommendations under step four of the opinion, the Court does not find that it reflects a failure on the ALJ's part to consider Patterson's mental health when determining the RFC. Remand to have the ALJ move the same explanation regarding Steinhoff, the only medical source to opine as to Plaintiff's mental abilities, to step four of the sequential evaluation would

17

be a futile endeavor.  Additionally, the ALJ's reference to Dr. Sethi's diagnosis of depression at step four reflects that he considered Plaintiff's mental health when formulating the RFC. (Tr. 23).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: June 23, 2015.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).