UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROANNA LYNN PATTERSON,                )                 | CASE NO. 5:14 cv 1470 |
| )                 | |
| PLAINTIFF,           )                 | JUDGE SARA LIOI |
| )                 | |
| vs.                                                    )                 | |
| )                 | MEMORANDUM OPINION |
| CAROLYN W. COLVIN, ACTING              )                 | |
| COMMISSIONER OF SOCIAL SECURITY   )                 | |
| ADMINISTRATION,                             )                 | |
| )                 | |
| DEFENDANT.        )                 | |

On June 23, 2015, Magistrate Judge Kenneth S. McHargh submitted his Report and Recommendation ("R&R") with respect to plaintiff Roanna Lynn Patterson's request for judicial review of defendant Commissioner of Social Security's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and Period of Disability ("POD") under Title II of the Act. (Doc. No. 18 ["R&R"].) The R&R recommends affirmance of the Commissioner's decision. Plaintiff has filed objections to the R&R (Doc. No. 19 ["Obj."], and the Commissioner has filed a response (Doc. No. 20 ["Resp."]). Upon a de novo review of the portions of the R&R to which objections have been made, and for the reasons that follow, the Court ACCEPTS the R&R, in part, REJECTS the R&R, in part, and REMANDS this matter to the Administrative Law Judge ("ALJ") for further proceedings.

Because plaintiff objected only to the portion of the R&R recommending the affirmance of the Commissioner's denial of benefits, the remainder of the R&R, including its account of the factual and procedural history of the case, is hereby accepted as written. (*See*

R&R at 567-575.[1]).

## I. STANDARD OF REVIEW

This Court's review of the R&R is governed by 28 U.S.C. § 636(b), which requires a de novo review as to those portions of the document to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to").

Judicial review of an administrative decision under the Social Security Act is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) (citations omitted). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citation omitted).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citations omitted); *see DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). Nor need the reviewing court necessarily agree with the Commissioner's determination in order to affirm it.

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

"Even if [the] Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle*, 609 F.3d at 854-55 (citation omitted). This is true even if substantial evidence also supports the claimant's position. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

Even when there is substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Likewise, a court "cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

II. **OBJECTION: THE ALJ FAILED TO CONSIDER THE EFFECT OF PLAINTIFF'S MENTAL IMPAIRMENTS ON PLAINTIFF'S RFC AND THE MAGISTRATE JUDGE IMPROPERLY FOUND THE ERROR HARMLESS**

Plaintiff raised two objections to the R&R. Because plaintiff's second objection is dispositive, the Court begins there. Plaintiff insists that the ALJ failed to conduct a proper residual functional capacity ("RFC") assessment. Specifically, she claims that the ALJ neglected

to consider whether her non-severe mental impairments, along with her severe physical impairments, significantly limited her ability to do basic work activities. While noting that the ALJ did not specifically address plaintiff's non-severe mental impairments in his RFC analysis, the magistrate judge found that the ALJ adequately discussed his reasons for discounting the medical opinions relating to plaintiff's mental impairments elsewhere in his decision, "such that the ALJ was not required to incorporate the [mental] limitations into the RFC." (R&R at 583.) Under these circumstances, the magistrate judge determined that it would be a "futile endeavor" to "[r]emand to have the ALJ move the same explanation regarding [the medical source's opinion on plaintiff's mental health], . . . to step four of the sequential evaluation[.]" (*Id*. at 583-84.).

It is well settled that there is a five-step process an ALJ must follow to determine whether a claimant is entitled to disability benefits. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 498 (6th Cir. 2006) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)). At step one, the ALJ assesses whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.972(a). If the ALJ determines that the claimant is performing substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(b). At the second step, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Should the ALJ find a severe impairment at step two, the ALJ is required, at step three, to assess whether the severe impairment "meets or equals one of our listings in appendix 1 to subpart P of part 404." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the severe impairment does meet one of the listings, then the claimant is

4

disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment at the requisite degree of severity, the ALJ proceeds to step four to determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC represents the most a claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). The RFC is used to determine if the claimant can perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do past relevant work, then benefits are denied. 20 C.F.R. §§ 404.1520(f), 416.920(f). If she cannot do past relevant work, at the fifth step, the ALJ must use the RFC, along with the claimant's age, education, and work experience to determine whether she can transition to other available work. 20 C.F.R. §§ 404l.1520(a)(4)(v), 416.920(a)(4)(v).

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 24, 2008, the alleged onset date of disability. (Doc. No. 12 ["ALJ Decision"] at 97.) At step two, the ALJ determined that plaintiff had two severe impairments: obesity and degenerative disc disease. (*Id*. at 98.) He also addressed plaintiff's claimed mental impairments of depression and anxiety, as well as the mental health evaluation performed by William C. Steinhoff, Jr., M.A. in 2012. Psychologist Steinhoff diagnosed plaintiff with major depressive disorder, recurrent, in partial remission, and panic disorder without agoraphobia. (Doc. No. 12 ["Steinhoff Opinion"] at 512.) Dr. Steinhoff found that plaintiff had mild restrictions in understanding, remembering, and carrying out simple instructions, and had moderate restrictions related to understanding and carrying out complex work-related instructions. (*Id*. at 514.) The ALJ assigned "little weight" to Steinhoff's findings, concluding that the record did not support such findings, and emphasizing that "the claimant has never sought mental health treatment and she remains able to care for and transport her aging parents to

5

required appointments." (*Id*. at 99.)

At step three, the ALJ (again) determined that plaintiff's mental impairments were not severe, utilizing the four broad functional areas of daily living, social functioning, concentration and episodes of decompensation, set out in section 12.00C of the Listing of Impairments. 20 C.F.R. 404, Subpart P, Appendix 1 ("paragraph B" criteria). (*Id*. at 99-100.) The ALJ continued to step four, where he discussed plaintiff's RFC exclusively in terms of her physical impairments. Moving on to step five, the ALJ ultimately determined that plaintiff retained the residual functional capacity to perform the full range of light work. (*Id*. at 101-03.).

Plaintiff does not take issue with the ALJ's determination that her mental impairments are non-severe. Rather, she complains that the ALJ failed to consider her non-severe mental impairments in combination with her severe physical impairments in determining her RFC. She insists that the magistrate judge's determination that the ALJ's step three finding that her mental limitations are not severe was sufficient to warrant not incorporating them into the RFC analysis effectively negates the requirement in SSR96-8p that all impairments be considered in formulating the RFC. (Obj. at 588.) The Court agrees.

Social Security Ruling 96-8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, *even those that are not "severe."* While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (emphasis added).

As SSR 96-8p makes clear, the ALJ is required to consider *all* impairments, both

6

severe and non-severe, because a non-severe impairment may still contribute to a finding that a claimant is disabled. "Notably, the definition [of a non-severe impairment] contemplates that non-severe impairments may very well impose *some* type of limitation on basic work activities; accordingly, an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment—either singly or in combination with a claimant's other impairments—does not impose *any* work-related restrictions." *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (citing 20 C.F.R. § 404.1521(a) [defining a non-severe impairment as an impairment that "does not *significantly* limit [a claimant's] physical or mental ability to do basic work activities"]) (emphasis added). Where an ALJ determines that non-severe impairments do not result in any work-related restrictions or limitations, the ALJ "is required to state the basis for such conclusion." *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013) (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009)).

Courts within the Sixth Circuit have repeatedly held that "an ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error." *Katona*, 2015 WL 871617, at *7 (collecting cases); *see, e.g., Al Ghawalb v. Comm'r of Soc. Sec.*, No. 11-CV-13972, 2012 WL 2804837, at *6 (E.D. Mich. July 10, 2012) (remand necessary where the ALJ referenced the claimant's psychiatric evaluations in step two, but failed to reference them in his RFC assessment).

Here, it is, at best, unclear whether the ALJ considered the cumulative effect of plaintiff's non-severe mental impairments when formulating the RFC. At step three, the ALJ noted that:

> The limitations identified in the 'paragraph B' criteria are not a residual functional

> capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.

(ALJ Decision at 100-01.) While the ALJ acknowledged that the RFC analysis is more exacting than the non-severe determination in steps two and three, he simply refers back to his step 2 and 3 analysis as "reflect[ed]" in his RFC. Yet his RFC analysis focuses exclusively on plaintiff's physical impairments, without any discussion of whether her non-severe mental impairments contribute, in any way, to an inability to perform substantial gainful work. Under these circumstances, the Court cannot conclude that the ALJ properly considered all impairments in accordance with SSR 96-8p and remand is necessary.[2] *See, e.g., Garcia v. Comm'r of Soc. Sec.*, No. 3:14-CV-201, 2015 WL 4450678, at *4 (S.D. Ohio July 20, 2015) (ALJ's failure to include limitations arising from plaintiff's mental impairments because they were "non-severe" was reversible error because the ALJ conflated steps two and four and failed to reasonably explain the absence of such limitations in the RFC), *report adopted by* 2015 WL 4934191 (S.D. Ohio Aug. 18, 2015); *Hicks*, 2013 WL 3778947, at *3 (remand necessary where ALJ offered detailed findings that mental impairments were not severe but failed to consider "combined limiting

---

[2] Nor did the ALJ explore the potential impact of plaintiff's mental impairments with the VE at the evidentiary hearing. The ALJ's examination of the VE focused exclusively on plaintiff's alleged physical limitations and how these limitations would affect plaintiff's ability to perform substantial gainful activity. (Doc. No. 12 ["Hearing TR"] at 123-25.)

8

effects" of non-severe mental and severe physical impairments).³

The possibility that the ALJ may have failed to consider the cumulative effect of plaintiff's mental impairments, along with her severe physical impairments, is especially troubling given the fact that the ALJ based his decision to treat plaintiff's mental impairments as non-severe, in part, on the fact that plaintiff has not sought treatment for her depression. (ALJ Decision at 99; *see also* R&R at 583 ["The ALJ's findings [relative to the severity of her mental impairments] in this regard are substantially supported in that the record does not reflect Plaintiff pursued mental health treatment, aside from receiving prescriptions for anti-depressants from her physicians."]).

Social Security Ruling 96-7p cautions that the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). The ruling lists examples of sound explanations of reasons for noncompliance, such as an inability to afford treatment, and the ruling instructs that it may be necessary to "recontact the individual or question of the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment . . . ." *Id*.

---

³ It should be noted that, in *Hicks*, the court was confronted with an ALJ's decision that contained remarkably similar language relating to his treatment of the claimant's non-severe mental impairment. *See id*. at *15. The court reasoned that while the ALJ may very well have "determined that, when combined with her physical impairments, Hick's mental impairments caused no further work related limitations, he is required to state the basis for such conclusion." *Id*. at *3 (citation omitted). The court found that remand was necessary because it was unclear from the record whether that was, in fact, what the ALJ did. *Id*. A similar result is required here.

Additionally, "though Ruling 96-7p itself is silent on the effect of mental illness on compliance, the Sixth Circuit has joined other federal courts in recognizing that for a claimant suffering from mental illness, noncompliance with treatment may be a symptom of her condition, rather than evidence that her condition is not disabling." *Johnson v. Comm'r of Soc. Sec.*, No. 13-12139, 2014 WL 4724751, at *3 (E.D. Mich. Sept. 23, 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (further citation omitted)); *see, e.g., Martin v. Comm'r of Soc. Sec.*, No. 1:12-CV-1030, 2014 WL 700414, at *11 (W.D. Mich. Feb. 24, 2014) (ALJ's credibility determination was not supported by substantial evidence to the extent that the ALJ relied on the claimant's lack of mental health treatment where ALJ failed to consider plaintiff's stated reason that he could not afford the treatment); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation").

At the September 5, 2012 hearing, the ALJ asked plaintiff if she saw "a psychiatrist or counselor" for mental health treatment. (Doc. No. 12 ["Hearing TR"] at 115.) Plaintiff responded, "No, sir. I never have[,]" but added "I'm sure I probably need it." (*Id*.) The ALJ did not inquire further, and the record is bereft of any explanation offered by plaintiff as to why she did not seek such medical care. Given the fact that the record at the hearing demonstrated that plaintiff did not have medical insurance (*id*.) and did not have any income (other than food stamps) (*id*. at 116), the ALJ was on notice that plaintiff may not be able to afford psychological counselling. Additionally, it is also possible that plaintiff's failure to seek treatment represents a symptom of the underlying mental health impairments. In any event, the ALJ should have developed the record as to plaintiff's reason(s) for not seeking mental health assistance before adopting the omission as evidence that the condition was non-severe.

10

It may very well be, as the magistrate judge has suggested, that similar reasoning will support both a finding that the mental impairments are non-severe and that these mild limitations do not restrict work activity. Given the fact that the Court has reason to question the factual underpinnings for the non-severe finding, however, the Court cannot conclude that the step 2 and 3 analysis also satisfies the inquiry at step 4. Moreover, on remand, if the ALJ finds that no mental restrictions should factor into the RFC, he must state his reasons for reaching such a conclusion and may not rely on vague language suggesting that his reasons exist somewhere in his decision.

For all of the foregoing reasons, plaintiff's objection to the magistrate judge's determination that any error in the ALJ's step 4 analysis is harmless is sustained.

III.   **OBJECTION: THE MAGISTRATE JUDGE ERRED IN FINDING THAT THE ALJ DID NOT MISINTERPRET THE OPINION OF AN EVALUATING DOCTOR AND THAT ANY POSSIBLE ERROR WAS HARMLESS**

Plaintiff also complains that the ALJ misinterpreted the opinion of Stephen Nutter, M.D., a non-treating medical source, as encompassing a limitation to light work, and then erroneously failed to assign the opinion any weight. In the R&R, the magistrate judge determined that the ALJ properly found that "Dr. Nutter's opinion, which provides that Plaintiff could stand or walk for a total of 5 hours, could allow for at least a limited, if not a full, range of light work, as the rulings only require that an individual be able to walk or stand for 'approximately' 6 hours." (R&R at 577.) The magistrate judge also noted that, according to Dr. Nutter, plaintiff would not be able to perform sedentary work because she could not sit for more than 4 hours in a workday, "which falls below the 6 hour threshold." (*Id*. at 578.) Ultimately, the magistrate judge concluded that, even if the ALJ had mischaracterized the sum and substance of Dr. Nutter's opinion as to sedentary work, any such error was harmless because the ALJ "adopted Dr.

11

Nutter's opinion only to the extent that it coincided with a limitation to light work[,]" and all other medical sources addressing plaintiff's RFC opined that plaintiff could perform light and sedentary work. (*Id.*)

Plaintiff suggests that the magistrate judge's reasoning was flawed because, after he observed that Dr. Nutter precluded sedentary work, the R&R underscored the fact that "'of the seven occupations the VE identified that Plaintiff could perform, six were sedentary occupations.'" (Obj. at 587, quoting R&R at 578.) The Court finds that there was no inconsistency in the magistrate judge's reasoning as the magistrate made clear that the ALJ only relied on the portion of Dr. Nutter's opinion that provided for light duty work and the remaining relevant medical opinions all provided for sedentary work. This portion of plaintiff's objection is overruled.

The magistrate judge did, however, find that "the ALJ did not expressly state the weight assigned to [this] one-time examiner's opinion[,]" but determined that any such error was harmless. (R&R at 579.) According to plaintiff, this finding was also error and has made it "impossible for the Court to conduct a meaningful review and to determine the weight provided to the opinion." (Obj. at 586, citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-243 (6th Cir. 2007), and *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006).)

Plaintiff's argument is without merit, and her citations to *Rogers* and *Nelson*—both involving the weight to be given to treating physicians—are unpersuasive. In *Rogers*, the court observed that "greater deference is generally given to the opinions of treating physicians than those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Under the treating physician rule, the ALJ must provide "good reasons" for discounting a

12

treating physician's opinion. *Id*. (citing SSR 96-2p, at *5).

While an ALJ must consider every medical opinion offered (*see* 20 C.F.R. §§ 404.1527(d), 416.927(d)), he need not discuss every piece of evidence in his decision. *Dykes ex. rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004) (citation omitted). As such, the Sixth Circuit ruled in *Dykes* that the failure to assign weight to the opinion of a consultative, non-treating source may not constitute reversible error where the ALJ's decision is otherwise supported by substantial evidence. *Id*. at 468; *see, e.g., Wright v. Astrue*, No. 3:08-cv-102, 2009 WL 1471279, at *3 (E.D. Tenn. May 27, 2009) (failure to mention report by state agency consulting psychologist was harmless error where the ALJ's decision was supported by substantial evidence) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005)).

Here, there is no dispute that Dr. Nutter was a consultative, and not treating, physician, as he only saw plaintiff once, and the one-time evaluation was performed in connection with the present claim for benefits. Thus, following remand, if the Court determines that there exists substantial evidence to support the ALJ's decision, a failure to assign weight to Dr. Nutter's opinion would be considered harmless.[4] Of course, because the matter is being remanded to the ALJ for further consideration, it would assist the Court (and make for a more complete record) if the ALJ would re-evaluate Dr. Nutter's opinion and indicate what weight, if

---

[4] Moreover, plaintiff fails to address the magistrate judge's observation that a number of jobs identified by the VE that plaintiff could perform at step five did not require plaintiff to perform the activities that Dr. Nutter prohibited. (R&R at 580, citing Hearing TR at 122-23.) Thus, even if the ALJ had adopted the restrictions imposed by Dr. Nutter, in their entirety, it would not have changed the outcome. *See Salter v. Comm'r of Soc. Sec. Admin.*, No. 4:12-CV-888, 2015 WL 1880393, at *9 (N.D. Ohio Apr. 24, 2015) (in rejecting argument that the ALJ erred in failing to assign weight to opinion of non-treating physician, the court noted that adoption of all of the restrictions included in the non-testifying physician's opinion would not have prevented the claimant from performing substantial gainful work).

any, he assigns to it. Plaintiff's objection, as it relates to the treatment of Dr. Nutter's opinion, is denied.

The Court finds that remand for further proceedings is necessary so that the ALJ can properly evaluate plaintiff's mental impairments—in conjunction with her physical impairments—in determining the RFC, and reassess plaintiff's disability status. On remand, the ALJ should determine if plaintiff has good reasons for failing to seek mental health treatment, and should also explain the weight given to the various medical source opinions.

IV. **CONCLUSION**

For all of the foregoing reasons, the Court sustains plaintiff's objection relative to the ALJ's RFC analysis, ACCEPTS the magistrate judge's recommendations, in part, REJECTS the recommendations, in part, REVERSES the Commissioner's decision to deny plaintiff's application for SSI and POD benefits, and REMANDS this matter to the ALJ for further proceedings consistent with this Memorandum Opinion.

**IT IS SO ORDERED**.

Dated: September 21, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**